## MERCADO RIERA et al. v. MERCADO RIERA et al.

### No. 3960.

Circuit Court of Appeals, First Circuit.

Nov. 23, 1945.

William Cattron Rigby, of Washington, D. C., and Pedro M. Porrata, of Ponce, P. R. (Fred W. Llewellyn and Rigby, Leon & Weill, all of Washington, D. C., on the brief), for appellants.

Jose A. Poventud, of Ponce, P. R., and Celestino Iriarte, F. Fernandez Cuyar, and H. Gonzalez Blanes, all of San Juan, P. R., for appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

These are consolidated appeals taken by the executor and by the partitioner of an estate from three judgments [1] entered by the Supreme Court of Puerto Rico in three separate petitions for certiorari to the District Court of Ponce. The Supreme Court of Puerto Rico, finding that the same fundamental question was involved in each petition, disposed of all of them in a single opinion.

This litigation emerges from, and we venture to hope may prove the culmination of, an apparently bitter and certainly a protracted controversy between three of the four children and heirs of one Mario Mercado Montalvo, a widower, who died, testate, domiciled in Puerto Rico, on August 22, 1937, leaving a substantial estate. Since even the briefest summary of the salient points of this controversy, which is all that we shall attempt, will necessarily have to be lengthy and involved, a short and very general explanation of the Puerto Rican law with respect to the settlement of decedent's estates will not be out of place as an introduction.

Under the Roman Civil Law system prevalent in Spain, and also but with modifications in Puerto Rico, the principle of "universal heirship" prevails. Under this principle the heirs, upon acceptance of their inheritance, step directly and immediately into the shoes of their ancestor both as to assets and liabilities. That is to say, upon acceptance of their inheritance, heirs succeed at once to their ancestor's assets and liabilities alike and in consequence become bound for their ancestor's debts and obligations in the same manner and to the same extent that he was, even to the extent that if the liabilities prove greater than the assets, they become personally bound to the creditors for

[1] The executor appeals from all three judgments; the partitioner from one of them.

the balance. Civil Code, 1930, § 957. But the heirs are not under obligation to accept their inheritance (id. § 943) nor are they under obligation to accept or reject it immediately. Id. § 958. They may repudiate, or they may accept "under benefit of inventory" as it is called and thereby reserve decision whether to accept or to repudiate the estate until they have had an opportunity to determine its net amount. Id. § 964 et seq. In the event of repudiation by the heirs, and apparently also in the event of their acceptance under benefit of inventory, (id. § 977) creditors of an estate can look only to its assets for payment.

Naturally under such a system as this the nature of an executor's duties depends upon whether the heirs accept their inheritance "purely and simply" (id. § 952) or whether they do not. If they do so accept, and the testator has expressly conferred no additional powers upon him, apparently an executor has only the power (id. § 824):

"1. To dispose and pay the suffrages, and funeral expenses of the testator in accordance with the provisions made by him in his will and, in their absence, according to the customs of the town.

"2. To pay, with the knowledge and consent of the heir, the cash legacies.

"3. To carefully see to the execution of the other provisions of the will and maintain, when just, its validity in and out of court.

"4. To take the necessary precautions

for the preservation and custody of the property with the intervention of the heirs who may be present."

But if they do not accept "purely and simply," that is, if they reject or if they accept under benefit of inventory, then the executor, to protect the assets of the estate from dissipation by the heirs to the prejudice of creditors, has powers roughly comparable to those of an executor or administrator under the legal system which prevails generally in the states of the United States.[2]

With this general statement of legal principles we turn to the facts, including a summary of the pertinent legal proceedings in the insular courts, and to specific provisions of the Civil Code of 1930, and the Code of Civil Procedure of 1933.

As already appears, Mario Mercado Montalvo, a widower, died testate, a resident of Puerto Rico, on August 22, 1937. By his will, after cash legacies, he left the major part of his estate to his four adult children as his sole and universal heirs (i. e., share and share alike, Civil Code, 1930, § 694) namely Mario Mercado Riera, Margarita Mercado Riera de Mandry, Maria Luisa Mercado Riera de Belaval, and Adrian Mercado Riera. He appointed his elder son, the appellant Mario, as his testamentary executor, (id. § 814) expressly conferring no special powers upon him (id. § 823) but "enlarging and extending the term of one year provided by law to all the time that may be necessary for the execution" of his trust,[3] and he appointed

---

[2] This is stated by the appellants and not contradicted by the appellees and would seem to follow from the provisions of the Law of Special Legal Proceedings (Code of Civil Procedure, §§ 534–619) which we shall consider later in this opinion. We find no explicit authority for it in the Civil Code of 1930.

[3] Civil Code, 1930.

"Section 826. The executor for whom the testator has not fixed a term must fulfill his office within a year, counted from his acceptance or from the conclusion of the litigation which may have been instituted with regard to the validity or nullity of the will or of any one of its provisions.

"Section 827. Should the testator desire to extend the legal term, he must expressly fix the time of the extension. Should he not have fixed it, it shall be understood that the term is extended for one year.

"If after the expiration of this extension the will of the testator should not yet have been complied with, the district court may grant another term for the time which may be necessary, in view of the circumstances of the case.

"Section 828. The heirs and legatees may, by common consent, extend the term of the executorship for the time they may consider necessary, but if the agreement is only that of a majority the extension can not exceed one year."

"Section 832. Executorship terminates by the death, incapacity, renunciation, or removal of the executor, and by the lapse of the term fixed by the testator, by law, and, in a proper case, by the persons interested.

"Section 833. In the cases of the foregoing section, and in case the executor has not accepted the office, the execution of the will of the testator shall devolve upon the heirs."

his "intimate friend," the appellant Pedro M. Porrata, partitioner of his estate.[4]

On August 28, 1937, this will (it was holographic) was duly presented and two days later it was probated and ordered protocolized in accordance with Puerto Rican law (id. § 640 et seq.) in a proceeding numbered 764 in the District Court for the Judicial District of Ponce, and on September 1, 1937, the same court in another proceeding (No. 782) issued letters testamentary to Mario, (Code of Civil Procedure, 1933, § 597) he having duly qualified by accepting his appointment and taking the oath required. Ten days later (September 10, 1937) the district court in this latter proceeding granted the executor an extension of ninety days in which to file the inventory required of him by § 568 of the Code of Civil Procedure, and on December 6, 1937, he was given another ninety-day extension of time for the same purpose.

In still another proceeding (No. 802) the same court on September 8, 1937, issued credentials "showing" Porrata's "authority" to act as auditor partitioner of the estate, and on August 19, 1938, in the same case, it granted Porrata an extension of time to September 6, 1939, to "comply with his obligations as such."

Now we turn to still another proceeding in the District Court for the Judicial District of Ponce, No. 1213.

This began with a petition by Adrian dated January 21, 1938, in which he asked to be adjudicated "an acceptor with benefit of inventory of the inheritance left to him by the testator" and for an order requiring the executor to appear before the court upon a day to be set by the court "with a complete statement and appraisal of the hereditary assets and liabilities, as well as all other data necessary for the preparation of the aforesaid inventory of the properties of said testator." On January 24, 1938, the court granted this petition ex parte decreeing that Adrian was an acceptor of his father's estate with benefit of inventory, and ordering the executor to appear on March 11, following, with "a complete statement and appraisal

of the assets and liabilities left by the testator," and with "all other data that may be necessary for the preparation of an inventory of the properties of the aforesaid deceased party." It ordered that notice of this order be given to the executor, heirs, creditors, legatees and all other interested parties.

At this point the appellant Porrata moved for leave to intervene and, there being no objection, his motion was granted. Thereupon he immediately filed two motions in which in substance he asked for a ruling that he, as testamentary partitioner, not Mario as executor, be required to prepare and file the inventory of the decedent's estate. The District Court of Ponce denied these motions and on certiorari the Supreme Court of Puerto Rico on April 29, 1938 (Porrata v. District Court, 53 P.R.R. 140) upheld this decision on the ground that the question whether under the circumstances the partitioner or the executor should prepare the inventory was "largely discretional with the (district) court," and although "it might have been more advisable to order the commissioner[5] to make the inventory," it was not an abuse of discretion to order the executor to do so "as all the property is apparently in the custody of the executor, and maybe for other reasons." We shall have occasion later on to refer to this decision again.

In this posture of affairs, and a controversy having developed between Maria Luisa and Adrian on the one hand and the executor on the other (Margarita appears to have been neutral throughout this entire controversy) over the first quarterly accounts filed by the executor on December 7, 1937, in No. 782, all of the heirs and Porrata on September 9, 1938, optimistically attempted to settle their differences by a so called "contract of compromise." This is a long and complicated document but it is important enough in the case to warrant description in some detail.

The first two clauses of the contract itself and its preamble consisting of seven clauses have no particular bearing upon the present controversy. Only the third

---

[4] Id. § 620. The testator may instruct (sic) to a third person the distribution of the sums he may leave in general to specified classes, such as relatives, the poor, or charitable institutions, and also the designation of the persons or institutions to which sums are to be applied.

[5] Porrata's office is referred to indiscriminately as Partitioner, Auditor Partitioner, Commissioner of Partition or simply Commissioner, as above.

and last clause of the contract proper, consisting of eighteen paragraphs lettered from (a) to (r), inclusive, refer directly to the Mercado estate. These paragraphs are set out in summary form but at some length by the court below. We shall attempt to summarize them still further.

Paragraph (a) sets out that the properties etc. constituting the estate are those set forth in an attached inventory made and authorized by the four heirs, plus such other properties etc. as "may subsequently exist, appear or be discovered as belonging to aforesaid testator," which inventory is to be filed in the District Court of Ponce for the purpose of proceedings in that court numbered 782 and 1213.

Paragraph (b) provides for the payment by the heirs of inheritance taxes, obligations of the estate, testamentary charges and "other legacies requiring immediate payment as set forth in the inventory aforesaid" and paragraph (c) provides that "All legacies established by the testator shall be satisfied in full."

Paragraphs (d) and (e) are immaterial to these appeals and paragraph (f) provides for the distribution of the estate among the heirs in accordance with the will as follows:

"The other properties of the Succession of Don Mario Mercado Montalvo, as set forth in said inventory, and all that may be discovered later as belonging to the testator, are hereby adjudicated in equal parts to the four heirs Don Mario, Dona Margarita, Don Adrian and Dona Maria Luisa, of the surnames Mercado y Riera, the heirs to avoid in every way possible a continuation of the community."

Paragraph (g) provides that "within fifteen days following the execution of this document" the executor shall file his final accounts with respect to the "fruits, income and earnings, or any other accretions to the estate" and that, if controversies respecting this account cannot be settled amicably within five days after request therefor by any contracting party, such "controversies or differences shall be submitted to the corresponding Court."

Paragraph (h) provides that the executor "shall be entitled to any compensation that the law provides in his favor and furthermore, all legal and necessary expenses incurred as a result of the executorship," excepting the fees provided for in paragraphs (m) and (n) infra.

Paragraph (i) provides that within ten days the executor shall "remit a notice of decease to the Treasurer of Puerto Rico in connection with the estate of Don Mario Mercado Montalvo and, upon the liquidation of the same, the executor shall pay for the account of each heir, as well as that of the divers legatees, that part of the inheritance tax payable by each party, charging the amount paid for each party to said party's respective share in the estate."

Paragraph (j) provides for the payment of legacies and the deduction of the amount thereof from the shares of the four heirs, and paragraph (k) provides for paying contingent creditors in a substantially similar manner.

Paragraphs (l) and (m) have particular reference to Porrata. Paragraph (l), after setting out Porrata's presence and the agreement of the heirs with respect to the partition of the estate, recites that Porrata "accepts and joins in said contract agreeing to all of its covenants, terms and conditions insofar as they affect him as auditor partitioner of aforesaid estate, undertaking to abide by its provisions and to comply with the letter of the present contract without making any modification, addition or alteration in the partition of the estate to be referred to in the following paragraph."

Then in the next paragraph, (m), it is agreed that the partitioner's report shall be executed by the partitioner and the four heirs, and that within ten days from the payment of the inheritance tax, the partitioner shall have his report prepared "in accordance with the provisions of the present contract, which cannot be altered except with respect to the description of the properties or goods of the estate, nor modified, added to or amplified in any manner whatsoever." It is also stipulated in this paragraph that the partitioner's fee shall be $20,000.

Paragraph (n) provides that there shall be included in the deed of partition as a liability the sum of $12,500 for the "agreed fees, expenses and costs of all kinds whatsoever, of Attorneys-at-law Felix Ochoteco and Fernando Zapater Martinez, for their professional services rendered to this date" (September 9, 1938) to the testator and the executor "and for any other reason in connection with the inheritance of Don Mario Mercado Montalvo."

The remaining paragraphs of the contract have no direct bearing on any of the questions raised on these appeals and need not be mentioned.

It appears that the executor did not file any notice of decease with the insular taxing authorities until May 3, 1939, although under the tax law he is allowed only 180 days in which to do so, and an inheritance tax receipt dated March 9, 1940, shows that he did not pay the inheritance tax until February 29, 1940.[6] Thereupon on March 16, 1940, the executor filed final accounts, which under paragraph (g) supra, he agreed to do within fifteen days of September 9, 1938, that is, on or before September 24 of that year, and this touched off a bitter controversy between the executor and the heirs Maria Luisa and Adrian which apparently is still raging in the insular courts. It is set out in extenso in the record, but since it does not directly concern us here we only mention it in passing.

All the foregoing is necessary background for the proceedings in case No. 782 which precipitated the present appeals.

While the parties were wrangling over the executor's accounts three motions, literally a petition and two motions, were filed in the above numbered case. In chronological order these were:

First. The heirs Maria Luisa and Adrian, by their attorneys, petitioned on October 27, 1941, for an order directing the executor (1) immediately to deliver the properties of the estate in his hands to the heirs, and (2) immediately to render to them his final supplementary account. On March 24, 1943, after hearing, the District Court denied this petition in toto.

Second. On November 18, 1941, Ochoteco and Martinez, the attorneys-at-law referred to in paragraph (n) supra of the compromise contract, filed a motion "For Fixing of Attorney's Fees" in the amount of $60,000 for themselves as attorneys for the executor from the date of the compromise contract to October 27, 1941. Notice of this motion was given to the attorney for Maria Luisa and the attorney for Adrian—Margarita was notified personally. Thereupon the attorneys for Maria Luisa and Adrian entered special appearances and moved that the service upon them be quashed on two grounds,

first that the moving parties were not parties to the proceeding in which the motion was filed, and second that Mario's executorship had expired on September 2, 1939, by force of the provisions of § 832 of the Civil Code quoted in footnote 3 supra. After hearing, the District Court on March 23, 1943, denied the motion to quash service but made no order with respect to attorney's fees unless it can be said that it denied them when it said, somewhat enigmatically, in its opinion on the first petition supra—"With respect to attorneys fees and costs, we make no special taxation whatsoever as we believe that none should be made."

Third. On November 21, 1941, the executor moved for an order (1) directing the clerk of the district court to remit to him as executor a certain deposit belonging to the estate; (2) authorizing him as executor to cash a certain specified check, and (3) authorizing him as executor to sell certain personal property of the estate to provide funds to pay legacies. The attorneys for Maria Luisa and for Adrian were served with notice of this motion and over a year later (December 14, 1942) they again appeared specially and moved jointly that the service upon them be quashed. Their motion was denied by the district court on March 24, 1943.

Thereupon on April 1, 1943, Maria Luisa and Adrian filed three separate petitions for certiorari in the Supreme Court of Puerto Rico to bring the above orders of the District Court for the Judicial District of Ponce up for review. On April 2 the Supreme Court granted the petitions and on April 3 its writs issued. Ochoteco and Zapater (Martinez) were notified of this action of the Supreme Court on the petition in which they were personally interested, and Porrata was notified of the action of the Supreme Court on at least one of the other two petitions. All three were allowed to intervene. Ochoteco and Zapater (Martinez) were heard by the Supreme Court on the merits both by brief and orally, and Porrata, who entered a "special appearance for the purpose of raising a constitutional question" filed an answer to the petitions for certiorari and a brief in support thereof, and his counsel was heard orally.

The Supreme Court of Puerto Rico, after hearing, handed down its opinion on

---

6 There appears to have been a protracted dispute over the amount of this tax.

July 14, 1943, and in accordance therewith it entered judgments vacating all three orders of the District Court and, on the writ issued to review the action of the district court on Adrian's and Maria Luisa's petition, (First above) in addition to vacating the order made by that court, it directed that "* * * another (be) rendered instead ordering the ex-executor Mario Mercado Riera to proceed to deliver the estate left by Mario Mercado Montalvo to his heirs Maria Luisa, Adrian, Margarita and Mario Mercado Riera, in compliance with the compromise contract executed on September 9, 1938, and also to render them supplementary accounts as from October 27, 1941, when the former accounts were rendered, until the time of such delivery, for all of which he is allowed a term of sixty days."

Thereupon the executor and the partitioner took these appeals to us. The two attorneys, Ochoteco and Zapater (Martinez) have not appealed.

The Supreme Court of Puerto Rico found that the same general fundamental question involved in the petitions for certiorari was whether Mario's executorship had expired by operation of law, and therefore that case No. 782 (the one in which he was appointed to that office) had automatically terminated, prior to the time when the petition and motions supra were filed in the district court. It concluded that the executorship had expired on September 1, 1939, two years after the date of appointment, by force of § 832 of the Civil Code quoted in footnote 3 supra.

■ Obviously the basic issue before us on these appeals is whether the affirmative answer of the Supreme Court of Puerto Rico to the above question of purely local law is "patently erroneous" (Bonet v. Texas Co., 308 U.S. 463, 471, 60 S.Ct. 349, 84 L.Ed. 401), or clearly "does violence to recognized principles of local law or established practices of the local community." De Castro v. Board of Commissioners of San Juan, 322 U.S. 451, 456, 64 S.Ct. 1121, 1124, 88 L.Ed. 1384. But preliminary matters must be disposed of before we reach this issue.

The appellees contend that we have no jurisdiction under § 128 of the Judicial Code.[7] 28 U.S.C.A. § 225. First, they say that no federal question is involved; and second, that the amount in controversy does not exceed $5,000, in fact, they say that in the petition and motions which underlie this litigation no amount whatever is in controversy. We do not agree with either of these contentions but we only need to consider the first one.

■ The appellant Mario, the executor, contends that under § 40 of the Puerto Rican Organic Act of March 2, 1917, 39 Stat. 951, 965, 48 U.S.C.A. § 861, the Supreme Court of Puerto Rico wholly lacked jurisdiction to review the insular district court orders in question on certiorari, and furthermore, that even if it had jurisdiction to review by such writs, it had jurisdiction thereon only to vacate the orders of the district court, not to substitute new ones in their stead. The appellant Porrata, whose petition for leave to intervene in No. 782 in the insular district court had been denied, contends before us as he did in the court below that the insular supreme court "manifestly violated the due process and equal protection clauses of the Fifth Amendment of the Constitution and of the Federal Organic Act for Puerto Rico, by entering judgment against * * * (him) upon the record of a proceeding in the District Court in which the partitioner was not a party, in which he had been denied the right to intervene, and in which he had never been accorded due notice and hearing."

We are not prepared to say that all of these federal questions are colorable and frivolous. Thus regardless of how we decide them, we have jurisdiction under § 128 of the Judicial Code, supra, not only to consider them but also to go further and decide whatever questions of local law may be presented regardless of amount in controversy. Municipality of Rio Piedras v. Serra, Garabis & Co., 1 Cir., 65 F.2d 691, 693, 700–702; Gelpi v. Tugwell, 1 Cir., 123 F.2d 377, 382.

The section of the Puerto Rican Organic Act upon which appellants rely (39 Stat. 951, 965, 48 U.S.C.A. § 861) reads in part as follows:

"Sec. 40. That the judicial power shall be vested in the courts and tribunals of Porto Rico now established and in operation under and by virtue of existing laws. The jurisdiction of said courts and

---

[7] They raised this question by appropriate motions under one Rule 36(b) which we ordered argued with the merits.

the form of procedure in them, * * * shall also continue to be as now provided until otherwise provided by law: Provided, however, That * * * the Legislature of Porto Rico shall have authority, from time to time as it may see fit, not inconsistent with this Act, to organize, modify, or rearrange the courts and their jurisdiction and procedure, * * *."

This provision, the executor argues, has the effect of crystallizing the form of procedure in all insular courts as of the date of the Organic Act (March 2, 1917) and then he says that in procedural decisions prior to March 2, 1917, the Supreme Court of Puerto Rico had repeatedly held that the writ of certiorari was not available to review orders like those here in question. From this he says it follows that the Supreme Court of Puerto Rico violated the above section of the Organic Act when it reversed its prior decisions on matters of procedure and granted certiorari here. The argument is unsound.

 In the first place we are far from convinced that the decision of the court below in the instant case is at variance with its earlier decisions. But however this may be, we do not construe the Organic Act as crystallizing insular procedure. From its brief and general language we cannot draw the inference that Congress intended strictly to limit the Supreme Court of Puerto Rico only to such procedure as was in vogue on the date of the Organic Act. Instead we think that Congress in the above section intended merely to provide a basic procedure which, within constitutional and statutory limits, the insular courts, like courts administering the Common Law, could develop as they saw fit. Thus, no constitutional limitation other than that alleged to lie in § 40 having been suggested, we conclude that even though the Supreme Court of Puerto Rico did depart from precedent in issuing writs of certiorari here—a matter we do not by any means concede—it did not thereby violate the Organic Act.

This brings up a question of local law for our review. Did the Supreme Court of Puerto Rico fall into clear error in is-

suing its writs of certiorari in the case at bar? We believe that it did not.

We find ample authority for the jurisdiction of the Supreme Court of Puerto Rico to issue writs of certiorari in an Act of the Puerto Rican legislature dated March 10, 1904, now §§ 670, 671, of the Code of Civil Procedure, authorizing and defining such writs in the following language:

"Section 670. (Definition) A writ issued by a superior to an inferior court requiring the latter to send to former a certified copy of some proceeding therein pending, or the record and proceedings in some cause already terminated in cases where procedure is not according to the course of the law, and to complete the proceedings when the lower court refuses to do so upon erroneous grounds.

"Section 671. The Supreme Court and the respective district courts of Puerto Rico are hereby authorized and empowered to issue writs of certiorari."

Clearly this statute gives the Supreme Court of Puerto Rico jurisdiction to issue writs of certiorari to the insular district courts "in cases where procedure (in the inferior court) is not according to the course of the law," and on certiorari to order the inferior court "to complete the proceedings" when it "refuses to do so upon erroneous grounds."[8]

Now the question arises whether the alleged errors of the District Court of Ponce were in matters of "procedure" as that word is used in the above act. The appellants say that they were not, but were in matters of substantive law, and therefore that the Supreme Court had no jurisdiction to issue its writs of certiorari in this case. In other words, they say that the Act distinguishes between questions of procedural and questions of substantive law, and permits the issuance of writs of certiorari to review only the former. We do not agree.

 In the first place we do not find any case in which the Supreme Court of Puerto Rico has construed the certiorari act with the common-law distinction between adjective and substantive law in mind, but instead we find many cases, like

---

[8] The language of this last clause § 670, which ante-dates the Organic Act, so clearly gives jurisdiction to the higher court, upon reversal on certiorari, in a proper case to order the entry of a new order by the inferior court that we have not considered it necessary to discuss the appellants' second alleged federal question.

this one, in which it has issued certiorari to review alleged errors without any discussion of the nature of the error alleged as adjective or substantive. In the second pace we find it hard to believe that in 1904 the insular legislature drafted its act in view of the above distinction. Furthermore in the Spanish text the same word "procedimiento" is used in both of the above clauses of § 670, and this would seem to indicate an intention to make the clauses harmonize which can only be accomplished by construing the earlier clause—"where procedure is not according to the course of the law"—to mean where the inferior court has failed to proceed according to, in other words, failed to follow, the course of the law. Thus we conclude that the Supreme Court of Puerto Rico has jurisdiction under the insular statute to issue writs of certiorari to correct errors of inferior courts regardless of the nature of the error alleged.

Nevertheless the appellants contend that the issuance of writs of certiorari in the instant case was so at variance with established principles of Puerto Rican law as to constitute reversible error. To refute this contention we need only to quote relevant decisions of the court below.

In Mendez v. Soto Nussa, 13 P.R.R. 366, 369, 370, the Supreme Court of Puerto Rico in 1907 stated its general rule with respect to certiorari thus:

"The general principles of law governing writs of certiorari have been the subject of much judicial discussion and the various opinions enunciated are not entirely harmonious. It has often been announced that the writ of certiorari cannot issue where the remedy by appeal or writ of error is provided by law. (Arpin, Ex parte, 2 Dec. P.R. p. 360, and other cases decided by this court.) And this may be regarded as the general rule subject, however, to so many exceptions, that the same cannot be considered as strictly accurate and universal. It is well settled that the writ of certiorari will issue in cases where the ordinary methods by appeal or writ of error prove to be inadequate, as a remedy, either as relates to promptness or completeness, so that a partial or total failure of justice may ensue. (Harries on Certiorari, sec. 54). Such remedies are specially liable to prove inadequate or tardy when the wrong done or threatened involves an excess or absence of jurisdiction. (Spelling Extraordinary Remedies, secs. 1918 and 1963.) In fact many authorities go to the point of holding that it is where other remedies are inadequate, and not necessarily absent when coupled with the danger that there may be a failure of justice, then resort may be had to certiorari. ([State ex rel.] Hamilton v. Guinotte [156 Mo. 513, 57 S.W. 281], 50 L.R.A. 794, and cases cited in that opinion and the extensive note found on pp. 787 to 801.) Since it is well to have some established rule governing cases of certiorari it is believed that we cannot do better than to adopt this, as announced by the Supreme Court of Missouri, in the learned opinion of Mr. Justice Sherwood, delivered in June, 1900, above cited.

"* * * Finally, the writ of certiorari will always be granted and the judgment of the court below reviewed, when that court has exceeded its jurisdiction, in rendering the judgment or decision of the court, and there is no other plain, speedy and adequate remedy, or to prevent that (sic) flagrant miscarriage of justice, by reason of errors of procedure."

Strangely enough in the above case the Supreme Court does not set forth the "general rule" as stated by Mr. Justice Sherwood which it adopts, but this rule appears in Nunez v. Soto Nussa, 14 P.R.R. 190, 192, decided in 1908, as follows:

" 'A remedy by appeal or writ of error is not sufficient to bar a certiorari, unless it is adequate to meet the necessities of the case; that is to say, equally beneficial, speedy and sufficient; not merely a remedy which at some time in the future will bring about a reversal of the judgment complained of, but a remedy which will promptly relieve the petitioner from the injurious effects of that judgment and the acts of the inferior court or tribunal.' "

Then in the case last cited the Supreme Court of Puerto Rico goes on to say:

"In the case at bar it is clear, from a mere inspection of the record, that, even if an appeal would lie, it would be a very inadequate and tardy remedy, and that the petitioner should not be required to go to trial and incur the expenses and delays of a long litigation finally to reverse the whole proceedings in the appellate court in the regular course of an appeal."

Then in another case decided in 1915 (Sanchez et al. v. Cuevas Zequeira, 23 P.R.R. 47, 51, 52), the Supreme Court clearly shows the discretionary nature of the

writ and the fact that it will not necessarily be denied when there is a remedy by appeal when it said:

"It has been held repeatedly by United States courts and by the Supreme Court of this island that as certiorari is an extraordinary remedy, it does not lie when there is another speedy, adequate and sufficient remedy in the ordinary course of law. That an ordinary remedy exists is not enough; it must be adequate and sufficient for the protection of the right claimed.

"The fact that there not only exists, as in the present case, an ordinary remedy of appeal from the orders of June 21 and 30 and July 1, 1915, but that such appeal has been actually taken and is now pending, is no bar to the issuance of an absolute writ of certiorari. If the court is convinced that the ends of justice require it to take such jurisdiction, we are of the opinion that it may issue the writ and review the proceedings."

▉ From the foregoing quotations it is abundantly clear that the Supreme Court of Puerto Rico under local law of long standing has discretionary power to issue writs of certiorari in order to expedite review even when review by appeal is available. In view of the protracted nature of this controversy, which the court below criticized at some length, and in view of the fact that a jurisdictional error of the District Court of Ponce is alleged (if case No. 782 automatically expired with the termination of the executorship on September 1, 1939, the district court had no jurisdiction to consider motions filed in that case thereafter) we can discern no abuse of discretion in issuing writs of certiorari below. In fact, since the alleged error of the district court was jurisdictional, there is authority in the language of the last paragraph of the Mendez case quoted above for the proposition that the appellees here were entitled to writs of certiorari as a matter of right.

▉ Thus at last we arrive at the basic question of substantive law presented. Did Mario's executorship expire by operation of law, (§ 832 of the Civil Code, footnote 3 supra) and the case in the district court in which he was appointed to that office (No. 782) automatically terminate, on September 1, 1939, so that the district court lacked jurisdiction to entertain petitions and motions filed in that case thereafter—specifically the petition and motions of October and November 1941? The appellants contend that it did not, and that the holding of the Supreme Court of Puerto Rico that it did, is "clearly and inescapably erroneous."

Their basic argument is that the court below fell into obvious error in concluding that Mario was a "Civil Law" executor whose duties were governed by the sections of the Civil Code quoted at the outset of this opinion, instead of holding that the estate was being administered "judicially" under the so called "Law of Special Legal Proceedings" of March 9, 1905, now embodied in §§ 534–619 of the Code of Civil Procedure. That is to say, they contend that it conclusively appears that the estate was being administered in the way provided by local law for administering estates as they generally are administered in the states of the United States, and therefore that the executor's term was not specifically limited in duration. We do not believe that this contention is valid.

Section 23 of the Law of Special Legal Proceedings (§ 556 of the Code of Civil Procedure) provides "The executor of the last will of a decedent, * * * or any person claiming as testamentary heir or legatee, * * * may, on a proper petition duly showing therein the necessary facts, apply for a judicial administration of the property of said decedent," and admittedly no such petition was ever prepared or filed in the appropriate district court as this section provides. But the appellants contend that this is of no moment because a judicial administration arose by implication from the conduct of the executor and of the heirs, and they say that this conclusion was sanctioned by the rulings of the district court and by the language of the Supreme Court itself in Porrata v. District Court, 53 P.R.R. 140, supra. In detail they say that Mario from the start did not perform merely the limited "functions of a purely Civil Code executor acting solely under the testator's will," but instead performed the extensive duties of an executor of an estate under judicial administration such as making an inventory, filing accounts, taking custody and management of the decedent's properties, collecting debts due the estate and paying debts owed by the estate, exacting

fees for his services,[9] and representing the estate in federal and insular tax matters. And they say that the heirs recognized that the estate was under judicial administration in their contract of compromise by making provision therein for the executor to prepare an inventory, pay debts, legacies, taxes and expenses of administration including a fee to himself, and to submit accounts. They say that the District Court of Ponce recognized that the administration was judicial by entertaining motions in Case No. 782 after September 1, 1939, and that the Supreme Court in the Porrata case supra must then have considered the administration judicial because it said that the inventory therein under consideration "will help the executor in performing one of the fundamental duties of his office, to wit, the payment of the debts of the estate," which, they say, is a duty imposed only upon executors of estates under judicial administration.

We recognize some force in the above argument. But the provisions of the Code of Civil Procedure with respect to the duties of executors and administrators are so confusing that it is exceedingly difficult to tell whether the duties enumerated above are imposed only upon executors of estates under judicial administration or are imposed upon executors and administrators generally. An examination of the various code provisions leads us heartily to endorse the statement of the Supreme Court of Puerto Rico in the Porrata case supra, which the same court quoted with approval in its opinion in the instant case, to the effect "that the time has come for the legislature to harmonize, by framing a complete statute covering the special field before us, the Spanish and American principles governing this whole and not unimportant phase of the law of decedent's estates."

■ However, we do not feel called upon to attempt to harmonize the overlapping and confusing provisions of the Puerto Rican codes ourselves because the court below held that a petition under § 556 of the Code of Civil Procedure, supra, was a sine qua non of judicial administration when it said "In our judgment, the lower court exceeded its jurisdiction when holding that the hereditary estate was un-

der custodia legis without any judicial administration having been decreed." In other words it held that under Puerto Rican law judicial administration cannot arise by implication or estoppel but only by petition in accordance with § 556. Certainly we are not prepared to say that this conclusion is "patently erroneous." On the other hand it would seem to be patently correct.

■ The appellants, however, have still another string to their bow on this phase of the case. They say that even though the administration was not judicial, the heirs by their contract of compromise agreed under § 828 of the Civil Code (quoted in footnote 3 supra) to extend the executor's time as long as might prove necessary to complete the administration of the estate. We believe that the court below in its opinion answered this argument conclusively by saying:

"However, we cannot disregard the provisions of Section 828 of the Civil Code, and, as the legatees have not intervened in any way in said compromise contract, the latter cannot, by judicial construction, operate as extending the term of the executor. On the contrary, if we pay attention to the short and precise terms fixed by the heirs so that the executor could perform his duties as such, it cannot be construed as an indefinite extension, as claimed by the executor. Moreover, at the time of the execution of said compromise contract, September 9, 1938, the executor still had one year for the fulfillment of his office, which did not expire until September 1, 1939. We cannot logically construe the contract as an indefinite and indeterminate extension of the executorship."

This brings us to the questions raised exclusively by Porrata.

His presence here is not easy to understand. In the first place it does not appear that he has any personal financial interest in any phase of the litigation before us on these appeals. His fee was agreed upon in the contract of compromise, and the appellees say in their brief and Porrata admitted in argument before us, that this fee has been paid in full. Furthermore, if there is any question of fees in the background, the accounting

---

[9] Section 830 of the Civil Code provides that "Executorship is a gratuitous office" unless the testator provides for his remuneration or the executor participates in the division of the estate or performs professional services.

proceeding, not this, would be the appropriate place to settle it.

In the second place Porrata is not officially affected by the judgments rendered by the court below. He never had any duty to administer the estate or to account for it, nor did he ever have possession of any of the assets of the estate or any duty to turn it over to the heirs. His only duty is specifically to apportion the assets and liabilities of the decedent among the heirs when the estate is turned over to them by the executor. Thus Porrata has no concern with the judgments of the court below on the two motions, in both of which are involved only matters of accounting and administration. And he has no concern with the judgment on the petition of Maria Luisa and Adrian, since, although it orders the estate turned over to the heirs, it does not specifically apportion it among them, but only provides that it shall be divided according to the compromise contract, which Porrata says he has done and for which he has been paid.

Apparently, however, Porrata's concern is not so much with the judgments of the court below as with statements in the opinion to the effect, first, that he, Porrata, had not complied with the terms of the compromise contract because he had failed to present his deed of partition to the heirs within the time agreed upon, and second, that his office was co-terminous with that of the executor and had expired because he had neither sought nor been granted an extension of time "to fulfill" it beyond September 6, 1939. His argument is that these statements, particularly the first one, deprive him of due process of law and equal protection of the laws because he was not allowed to intervene in the district court where, he says, he could have shown that his failure to comply with the terms of the compromise contract as to time was caused by the wrongful refusal of the heirs to accept the deed of partition which he had timely prepared and was ready to submit in strict conformity with the contract.

The above statements of the court are not necessary to its decision and so will not bind him in possible—from the history of this case we can almost say probable—future litigation with the heirs Maria Luisa and Adrian over the equitable division of the estate. But the short

answer to Porrata is that only final decisions of the Supreme Court of Puerto Rico are reviewable by us on appeal (§ 128 of the Judicial Code, 28 U.S.C.A. § 225) and the final decisions of the court below are embodied in its judgments, not in its opinion, and its judgments, as we have shown, do not affect Porrata. His fear that the above statements may be used against him in future independent litigation with the heirs over the specific apportionment of the estate does not give him standing to appeal. Boston Towboat Co. v. United States, 321 U.S. 632, 64 S.Ct. 776, 88 L.Ed. 975.

In this opinion, long as it is, we have not attempted to cover every argument advanced. We have discussed only the most substantial. The others we have fully considered but have found too lacking in merit to warrant specific refutation.

The judgments of the Supreme Court of Puerto Rico are affirmed with costs to the appellees.