ADRIÁN MERCADO RIERA ET AL., Petitioners, *v.* DISTRICT
 COURT OF PONCE, Respondent; MARIO MERCADO RIERA,
 Intervener.

No. 1836. Argued June 9, 1950.—Decided August 4, 1950.

*José A. Poventud* for petitioners Adrián and Margarita Mercado Riera; *Celestino Iriarte Miró* and *F. Fernández Cuyar* for petitioner María Luisa Mercado Riera; *Rafael Rivera Zayas, Benjamín Ortiz* and *Pedro M. Porrata,* for intervener.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Mario Mercado Montalvo died in Ponce on August 22, 1937 under a holographic will in which he designated executor his son Mario Mercado Riera. Despite the fact that the executorship had terminated on September 1, 1939,[1] the latter remained in possession of numerous properties belonging to the estate left by the decedent. On March 6, 1940, Mario Mercado Riera filed in the District Court of Ponce the "Final Accounts of the Executor of the Estate of Mario Mercado Montalvo, Mario Mercado Riera, up to March 4, 1940, Rendered to the Heirs and Subject to Supplementary Accounts." These final accounts included disbursements and charges totalling $733,994.52 and receipts totalling $772,864.30, as well as cash available as bank deposits amounting to $107,159.38 and disbursements entered for accounting purpose, pending payment, amounting to $68,289.60, an available sum of $38,869.78 remaining of said cash. Shortly thereafter the heirs Adrián Mercado Riera and María Luisa Mercado Riera de Belaval filed an opposition to the final accounts. After a prolonged hearing, the District Court of Ponce entered a Final Order or Decree on February 19, 1942 for the reasons set forth in an extensive statement of the case, opinion, and decisions. In said Order or Decree the lower court made, in brief, the following modifications and alterations:

---

[1] See *Mercado* v. *District Court,* 62 P.R.R. 350, affirmed in 152 F. 2d 86; certiorari denied in 328 U. S. 837, 90 L. Ed. 1612.

(A) As to the item entitled "House at No. 23 Marina Street," it ordered the accountant to restore to the assets in the final account the sum of $11,234.16 with legal interest at 6 per cent per annum from February 29, 1940;

(B) It reduced in $56.66 the item "Taxes Paid";

(C) It reduced in the sum of $16,392.25 the item entitled "Interest Paid—$36,100.64";

(D) From the item "Payments made on account of Instalments of Principal and Interest to Legatees" it deducted, as to the legatee Humbelina Ventura, the sum of $125.35; and $2,102.98 of the item "Regarding the Unnecessary Expenditure for Interest, etc.";

(E) It ordered a deduction of $2,052.14 from the item "Payment of Income on Life Annuities";

(F) As to the items "Traveling and Extra Expenses in the United States of the Accountant and Pedro M. Porrata (Attorney-at-law)" it ordered a deduction of $23,500;

(G) Regarding the item "Preservation, Miscellaneous, and Administrative Expenses, etc.," it ordered a deduction of $10,664.95;

(H) From the item "Fees of the Executor" it ordered a deduction of $7,208.11;

(I) The item "Inheritance Tax and Interest" was reduced in $33,471.44;

(J) It ordered the restoration of the item of $325.81 entitled "Passbook No. 2281";

(K) It ordered the accountant to include in the final account the sum of $428,600.33 instead of $413,064.63 which appears in the final account as "Credit in favor of the Decedent against the Partnership Mario Mercado e Hijos"; and to include in the final account the sum of $6,841.06 instead of $4,942.04 which appears in said account as "Profits" accruing to the decedent for one month and 22 days, during the year 1937 to 1938.

It further ordered the accountant to restore the items above mentioned under the letters "A" to "J", and stated

that "The preceding are all the modifications and altera-tions made by the court to the final account submitted by the executor Mario Mercado Riera; the final account sub-mitted by the executor Mario Mercado Riera on March 4, 1940 being hereby approved with the modifications and alterations indicated." It likewise stated that "By the present final decree the court orders that in accordance with law and justice any resulting balance, whether in money or in property, should be allotted to the persons entitled to the inheritance, that is, the four testamentary heirs named Ma-rio, Margarita,[2] Adrián, and María Luisa Mercado Riera, after paying the debts of the decedent Mario Mercado Mon-talvo and the expenses of the administration." It finally stated that it made "part of this final order or decree each and every one of the decisions separately set forth in the 'Statement of the Case, Opinion, and Decisions' filed to-day, . . .," all this "without special imposition of costs."

On March 2, 1942 the accountant Mario Mercado Riera appealed to this Court insofar as the final decree sustained the objection to the item set forth in said decree under the letters A, B, C, D, E, F, G, H, I, J, K, as well as because he feels aggrieved by each and every one of the adverse pro-nouncements made in said decree. On even date the opposi-tors Adrián and María Luisa Mercado Riera de Belaval appealed to this Court from said decree "insofar as said decree did not sustain, *in toto*, the restitutions and/or claims object of the impeachments marked with the numbers II, IV, VII(a) and (c), IX, X, and XI of the original opposition and with the letters A, D, E, and F of the additional opposi-tion." The contestants likewise appealed "from the pro-nouncement referring to the allotment of any resulting balance, whether in 'money or in property,' insofar as it is not limited to the money or funds included in the final account challenged," as well as from the failure to adjudge

---

[2] The heir Margarita Mercado Riera has apparently remained neutral throughout this long-drawn-out proceeding.

"the appellee Mario Mercado Riera to pay the costs and attorney's fees of the appellants."

The case was heard on appeal and on May 8, 1946 this Court rendered judgment. Its pronouncements may be summarized thus:

1. As to the item (b) "attorney's fees, $18,000," it ordered the accountant to restore to the estate the sum of $10,500;

2. It reversed the order appealed from insofar as it ordered the accountant to restore to the assets the amount of $325.81;

3. It modified the order and directed the accountant to include in his final account the sum of $428,633, instead of the sum of $413,064.63 originally included, but at the same time permitting him to include as a liability in the final account "the sum which, according to the liquidation made by the Treasurer and the vouchers which the executor should have in his possession, was paid to the Insular Treasury as income taxes owed by the testator at the time of his death."

4. It reversed the order appealed from insofar as it ordered the accountant "to include in the final account the sum of $6,481.06," and approved the item of $4,942.04 included by the accountant in the final account as profits accrued to the decedent for one month and 22 days during the year 1937 to 1938.

5. It reversed the order of the lower court as to the item entitled "Aid to Impecunious Persons," amounting to $5,721.52, and ordered the accountant to restore that sum to the assets of the estate.

6. It reversed the order of the lower court refusing jurisdiction to approve or reject the item entitled "To Adrián Mercado Jiménez—$3,550" which appears in the final accounts under the title "Payments made on account of Instalments of Principal and Interest to Legatees," and approved said item as a payment made to the guardian Mario Mercado Riera, as the first instalment of principal and in-

terest on the $10,000 donated by the four heirs to the minor Adrián Mercado Jiménez.

7. It reversed the order of the lower court insofar as it refused jurisdiction to decide whether or not the accountant should include in the assets of his final account the sum of $45,359.50, allegedly loaned by the testator to the partnership Mario Mercado e Hijos ordering said accountant instead to include the alleged claim in the inventory and in the final accounts of the executorship.

8. It reversed the order of the lower court insofar as it denied the petition of the contestants to include in the final accounts the sum of $5,250 which appears in the books of Mario Mercado e Hijos under the title "Family Burial Vault Fund" ordering the accountant instead to include in the assets of the estate the sum of $2,625, that is, the one-half of the Family Burial Vault Fund corresponding to the four heirs.

9. It modified the order appealed from in the sense of limiting its effect to the distribution among the heirs of any resulting balance, in cash or in credits or choses in action not yet allotted by virtue of the compromise contract.[3]

As thus modified, the final order entered by the lower court was affirmed by this Court without special imposition of costs.[4] Reconsideration was sought and denied. *Mercado v. Mercado,* 66 P.R.R. 764.

Both the accountant and the opposing heirs appealed from our judgment to the United States Court of Appeals for the First Circuit. The former, as to the awards in our judgment adverse to him, and the opposing heirs, insofar as our judgment (1) fixed the executor's fees in the sum of $7,500; (2) granted the latter the sum of $3,049 as extra-

---

[3] On September 9, 1938 the heirs executed a compromise contract, which is extensively referred to in the opinion delivered by this Court in *Mercado v. District Court,* 62 P.R.R. 350, 355.

[4] The lengthy opinion delivered by this Court in support of its judgment of May 8, 1946 can be found in *Mercado v. Mercado,* 66 P.R.R. 36.

judicial ex-executor; and (3) approved the item of $3,550 paid to the guardian Mario Mercado Riera as part of a legacy made in favor of Adrián V. Mercado Jiménez.

By opinion rendered on April 9, 1948 [5] the United States Court of Appeals for the First Circuit summarily affirmed our judgment. *Mercado Riera* v. *Mercado Riera*, 167 F. 2d 207. The Supreme Court of the United States denied a petition of certiorari filed by the accountant (335 U. S. 825), and at the request of the opposing heirs the Court of Appeals retained the mandate until August 10, 1948.

The District Court of Ponce received the mandate whereupon, on November 22, 1948, the accountant appeared before said Court with a writing entitled "Amendment to the Final Account of the Executorship of Mario Mercado Montalvo, up to March 4, 1940 and entitled 'Final Accounts of the Executor of the Estate of Mario Mercado Montalvo, Mario Mercado Riera, up to March 4, 1940, Rendered to the Heirs and Subject to Supplementary Accounts,' and deposit of money; all in compliance with the judgment of the District Court of Ponce of February 19, 1942, subsequently modified and thus affirmed by the Supreme Court of Puerto Rico on January 14, 1947," attaching thereto separate checks for $13,679.51 in favor of Margarita Mercado Riera; $30,699.73 in favor of María Luisa Mercado Riera, and $30,699.73 in favor of Adrián Mercado Riera.[6] Next day, that is, on November 23, 1948, the lower court ordered that the aforesaid checks "in payment of the obligations which (the accountant) should pay to said persons pursuant to the judgment rendered in this proceeding" be substituted for a single check in favor of the Clerk in order that said money deposit complied with the provisions of the Accounting Regulations of

---

[5] On April 13, 1948 said court denied reconsideration.

[6] Of the total sum deposited, amounting to $75,078.97, the amount of $37,705.90 was supposed to represent interest since August 10, 1948, the date until which the Court of Appeals retained the mandate at the request of the opposing heirs.

the district courts. The accountant did thus, depositing in court a certified check in the sum of $75,078.97 in favor of said officer. After the opposing heirs moved for the reconsideration of the aforesaid order of November 23, 1948, after they subsequently filed a "motion seeking an order for the execution of final judgment in this proceeding," and after certain other incidents which we shall not mention in detail so as not to lengthen further this opinion, on January 9, 1950 the lower court entered a lengthy order granting the "amended motion and deposit of the accountant," directing the latter to restore in cash the sum of $125.35 advanced to Humbelina Ventura, with interest from August 10, 1948 until the date of the deposit in the office of the Clerk, and denied the motion of the opposing heirs. The latter then appeared before us with a petition for certiorari. They allege in brief that the account rendered by Mario Mercado Riera up to March 4, 1940 included some items as having been actually paid and others entered for accounting purposes, the latter amounting to $68,289.60; that the balance of $107,159.38 in cash, by reason of the $68,289.60 entered for accounting purposes, was reduced to an available remainder of $38,869.78; that of the aforesaid $68,289.60 the District Court of Ponce, in its final decree of February 19, 1942, ordered the restitution of four items unduly entered for accounting purposes, totalling $17,820.77 [7] together with the balance available in cash amounting to $38,869.78; that all the courts have decreed the restitution of the $17,820.77 unduly entered for accounting purposes, as well as of the $38,869.78 of the available remainder, that is, a total of $56,690.55; that the intervener-accountant pretending to

---

[7] The four items are listed below:

| | |
|---|---|
| 1. Extra expenses of Attorney Porrata | $1,450.00 |
| 2. Entered in excess for the accountants Rivera and Díaz | 1,080.00 |
| 3. Unduly entered for Ochoteco and Zapater | 8,082.66 |
| 4. Excessively entered as compensation for the ex-executor | 7,208.11 |
| TOTAL | $17,820.77 |

pay thereby what was actually owed by virtue of the judgment, with legal interest, proceeded to file in the District Court of Ponce on November 22, 1948, a writing which he termed an amendment to the final account up to March 4, 1940, and to insufficiently deposit the amount of $75,078.97, which sum did not include the restitution of the items unduly entered for accounting purposes amounting to $17,820.77, nor the $38,869.78 of the available remainder; that he did not pay either interest on all restorable items from February 19, 1942 (the date of the final order entered by the district court) until the date on which the so-called amendment to the final account was submitted, confining himself to compute the legal interest on the affirmed judgment only for a period of three months, twelve days, that is, from August 10, 1948 (the expiration date of the term for the retention of the mandate requested by the opposing heirs) to November 22, 1948, when the accountant submitted the aforesaid amendment to the final account, the amount of $3,705.90 being deposited to cover said interest. The opposing heirs finally alleged in their petition that the lower court erred in refusing to order the payment of the $17,820.77 and of the $38,869.78 referred to and in denying their right to receive legal interest from February 19, 1942 until payment in full of all the items awarded in their favor. Pursuant to their request, we granted certiorari.

 The intervener-accountant asks us to refuse jurisdiction to review the case by the special way of certiorari alleging, among other things, that the order of the lower court is final and, hence, appealable; and that being such (as it was) the extraordinary remedy of certiorari is not available to review it, since this Court lacks jurisdiction therefor pursuant to the prescriptions of § 40 of the Organic Act of Puerto Rico, which crystallized procedures in all insular courts. We need not discuss at length the questions thus raised, since they have been decided adversely to the contention of the intervener-accountant, both by this Court

as well as by the United States Court of Appeals for the First Circuit. See *Pérez* v. *District Court*, 69 P.R.R. 4, and *Mercado Riera* v. *Mercado Riera*, 152 F. 2d 86, 93.

██ We now enter in full into the issues raised in the petition for certiorari. As has been seen, they are that the lower court did not order the payment of the total sum of $56,690.55 nor of legal interest from February 19, 1942 until payment in full of all the items awarded in favor of the petitioners.

It can not be denied that the courts have adjudicated with respect to the remainder in cash amounting to $107,159.38, as to the disbursements for accounting purposes pending payment amounting to $68,289.60, and as to the four items improperly entered for accounting purposes amounting to $17,820.77. It is also unquestionable that by virtue of this adjudication the total amount to be restored by the accountant as the difference between the $107,159.38 and the items which appear as disbursements for accounting purposes pending payment, plus the amount of the aforesaid four items, is $56,690.55. However, is the accountant now, by virtue of said adjudication, under the obligation to reimburse to the petitioners their share in said $56,690.55, plus interest? Taking into consideration the attendant circumstances herein, this question should, in our judgment, be answered in the negative.

It will be recalled that in the holographic will executed by Mario Mercado Montalvo, predecessor both of the intervener as well as of petitioners herein, the former designated executor his son Mario Mercado Riera without having to post a bond, "extending the term of one year provided by law to all the time that may be necessary for the execution of his trust." It was precisely by virtue of the designation made in his favor in said will that the intervener accountant took possession of the estate left by his predecessor. He had such possession, therefore, pursuant to law. The question

relative to the duration of the executorship was taken to the District Court of Ponce which held that said executorship had not yet terminated. After said judgment was rendered, the executor's possession still complied with the law. On July 14, 1943 this Court decided on appeal that the executorship had terminated on September 1, 1939, set aside the order rendered by the District Court of Ponce on March 24, 1943 and decreed that an order should be entered directing the ex-executor Mario Mercado Riera to proceed to deliver said estate to all the heirs of Mario Mercado Montalvo in compliance with the terms of the compromise contract of September 9, 1938, and also to render a supplementary account as from October 27, 1941 when he rendered his former account, until the time of such delivery, for all of which he was allowed a term of 60 days. An appeal was taken to the United States Court of Appeals for the First Circuit and our judgment was affirmed on November 23, 1945. *Mercado Riera* v. *Mercado Riera*, 152 F. 2d 86. Pending the appeal, the accountant remained in possession of the estate meanwhile rendering supplementary accounts which include the $107,159.38 which as remainder in cash he included in the final accounts rendered up to March 4, 1940. We are aware of this. Hence, it is not possible that the accountant be now ordered to restore to the petitioners the difference between said remainder and the disbursements not entered for accounting purposes, plus the four items unduly entered. If the restitution of that difference were ordered, a grave injustice would be done, since on the one hand the accountant would have to pay his coheirs their share in the $56,690.55, and on the other hand no account would be given to the fact that the accountant's carrying of that difference to the supplementary accounts has been pursuant to law and in compliance with our judgment, and that up to the present, there has been no final adjudication by the courts as to those supplementary accounts. Therefore,

the restitution to the petitioners of their share in the total item of $56,690.55 should not be ordered at this time.

▮▮▮ Now then, insofar as the allegation of the petitioners that they are entitled to receive legal interest from February 19, 1942 (the date of the final order) until payment in full of all the items adjudicated in their favor is concerned, we begin by saying that we need not determine in general whether the final order entered by a district court approving the final accounts rendered by an executor or administrator, is a divisible or an undivisible judgment. The point about which we entertain no doubt whatsoever is that such final order is equivalent to a final judgment. Nor can it be doubted that an appeal may be taken therefrom. Section 590 of the Code of Civil Procedure, 1933 ed.

The District Court of Ponce, when the final accounts up to March 4, 1940 were submitted to its consideration, disposed of each and every one of the items included therein, entering in the course of and within its opinion separate orders to that end. Furthermore, in its final order the court specified separately the items subject to modifications and alterations and close to the end of the order, as we have indicated, it stated that it approved the final accounts submitted with said modifications and alterations. This Court also considered separately each and every one of the items object of the final accounts and in its judgment adjudicated separately and independently as to those which it should reverse or modify in any way, and affirmed with the modifications thus made the final order of the lower court. Our judgment, as we have already indicated, was summarily affirmed by the appellate court. Thus, several courts have finally disposed of the items involved in the final accounts, taking them into consideration independently and disposing of each and every one of them individually and separately. Under these circumstances we arrive at the conclusion that in this case, since the various items involved are separable and divisible, the final order entered by the District Court of Ponce with

respect to the final accounts rendered by the intervener herein was equivalent to a divisible judgment.[8]

We have already indicated that with respect to the real property a compromise contract existed between the intervener herein and the other heirs.[9] The final accounts submitted by the intervener-accountant referred to the amounts received by him and to the payments he had made or which were pending. The final order entered by the lower court regarding said accounts was one for the payment of money. It is true that in said order the court did not specifically state that the accountant had to pay interest on all of those amounts he was bound to pay to the remaining heirs. Such obligation on his part, however, was obvious. Section 341 of the Code of Civil Procedure provides that "The secretary must include in the judgment entered up by him, any interest on the judgment of the court, from the time it was made, . . ." and § 1 of Act No. 5 of August 17, 1933 (Spec. Sess., p. 26) provides "That in the absence of an agreement in writing entered into and executed at the time, the rate of interest . . . upon unpaid judgments, shall be at the rate of six (6) dollars annually, on each one hundred (100) dollars or upon its equivalent in value, . . ." Construing those legal precepts we have said that "such interests by express provision of law, were a part of the judgment and recoverable" despite the fact that it was not so stated in the judgment and notwithstanding the fact that "the clerk of the court in entering judgment did not include them either." *Padilla* v. *Vidal, ante,* p. 483 and cases therein cited; *Ex parte Franceschi,* 53 P.R.R. 72.

The intervener-accountant contends, however, that notwithstanding the preceding statutory requirements and our decisions on this point, he is not bound to pay such

---

[8] See also *Vidal* v. *Monagas,* 66 P.R.R. 872, 873; *cf. Martinó* v. *Santisteban Chavarri & Co., S. en C.,* 53 P.R.R. 283, 287; *Cosme* v. *Márquez,* 49 P.R.R. 764, 769; *Franceschi* v. *District Court,* 45 P.R.R. 646, 656.

[9] See footnote 3.

interest for, having the opposing heirs appealed from the final order entered by the District Court of Ponce and from the judgment rendered by this Court and the judgment being an integrity, the failure to execute the order was due, not only to the appeals he had taken, but also to those taken by the petitioners herein, and that hence, he is not bound to pay interest except since August 10, 1948, on which date the period granted to the opposing heirs by the Court of Appeals of the United States to retain the mandate expired, inasmuch as the parties are not entitled to interest for the period during which their respective appeals were pending. *Concepción* v. *Latoni*, 63 P.R.R. 666, 669. However, the judgment was not an integrity. We have said that it was divisible. The opposing heirs only appealed to this Supreme Court from a specific portion of the final order. They likewise appealed to the Court of Appeals of the United States from a specific portion of our judgment. From the final order entered by the district court they appealed to this Court (1) insofar as it did not grant *in toto* the orders and other claims involved in the impeachments identified (by them) with the numbers II, IV, VII(*a*) and (*c*), X and XI of the original opposition, and with the letters A, D, E, and F of the additional opposition; (2) from the pronouncement with respect to the adjudication of any resulting balance "in money or in property, insofar as it is not limited to the money or funds comprised in the final account challenged"; and (3) insofar as the final order did not adjudge the accountant to pay the costs and attorney's fees.[10]

---

[10] The impeachments referred to in the notice of appeal of the opposing heirs were the following:

Impeachment II—Item of disbursements entitled "Aid to Impecunious Persons" $5,721.52;

Impeachment IV—Scholarships for Indigent Students—$10,176.79;

Impeachment VII—Payments made on account of instalments of principal and interest due legatees amounting to $86,250.00;

(*a*) If the amount of the inheritance tax and interest corresponding to each legatee (save the donee Adrián V. Mercado Jiménez) as well as

In view of the foregoing we conclude that the intervener-accountant should pay legal interest to the petitioners herein at the rate of 6 per cent per annum on the items adjudicated in favor of the latter (excepting the $56,690.55), in the following manner:

1. On all those items appearing in the final accounts rendered by the intervener-accountant up to March 4, 1940 which were approved, with or without modifications are alterations, by the District Court of Ponce by virtue of its final decree, in no way object of the appeals taken by the opposing heirs and not modified or reversed by us, the accountant creditor will pay interest to the petitioners herein from February 19, 1942 until the date of the deposit in court of said items;

2. On all those items object of the appeal taken by the opposing heirs to this Court from the final order entered by the District Court of Ponce, the intervener-accountant will pay to the petitioners herein interest, as said items might have been affirmed, modified, or altered by us, from May 8, 1946—on which date this Court rendered judgment modifying and affirming the final order—until the date of the deposit in court of said items, with the exception of those items

the total sum of the amounts which, without intervention of the opposing heirs, were advanced to some of the legatees, have not been deducted from or charged to the one-fourth of the principal amount of the legacies already paid; the amount paid to the legatee Humbelina Ventura is likewise challenged; and

(c) The sum of $3,550 which is included in the final accounts as having been paid to the legatee Adrán V. Mercado Jiménez;

X—$20,000 fixed for administration expenses, fees of expert accountants, etc.

XI—Fees of the executor $10,257.41;

(A)—$45,359.50 not included in the accounts of the executorship as a credit of the predecessor.

(D)—Disbursements to legalize the collection of certain insurance policies and the failure to state the amount of such policies, totaling not less than $7,689.20;

(E)—Certain benefit pending payment by Bazar Atocha;

(F)—Credit in favor of the heirs, entitled "Family Burial Vault Fund," amounting to $5,250.00.

object of the appeal taken by the opposing heirs themselves to the United States Court of Appeals for the First Circuit;

3. On the items object of the appeal taken by the contestants to the United States Court of Appeals for the First Circuit the accountant will pay interest from August 10, 1948—on which date the term they had requested said court to retain the mandate expired—until the date of the deposit of said items in the lower court;

4. On all those items modified or altered by this Court by virtue of the appeal taken to us by the accountant, the latter will pay interest at the rate indicated, as said items were modified by us, from February 19, 1942—the date of the final order—until the same are deposited in the lower court.

Of course, our foregoing statements regarding payment of interest only refer to those items which by virtue of the adjudication made and upon receipt of the mandate from the United States Court of Appeals for the First Circuit, the accountant was obliged to restore and has already deposited in the court a quo, amounting to $71,373.07. There seems to be no controversy whatever as to the amount of those items. However, in view of the conclusion at which we arrived above as to the $56,690.55, it is not possible to adjudge the accountant to pay interest until a final order regarding the supplementary accounts is entered.

The order appealed from, entered by the District Court of Ponce on January 9, 1950 in civil case No. 782 entitled "*Mario Mercado Riera, accountant,* v. *Adrián, María Luisa, and Margarita Mercado Riera,* opposing heirs, for letters testamentary," will be set aside and the case remanded to said court for further proceedings not inconsistent with this opinion.

Mr. Justice Snyder did not participate herein.