MARIANO VILLARONGA, COMMISSIONER OF EDUCATION OF PUERTO RICO, Petitioner, *v.* DISTRICT COURT OF PUERTO RICO, AGUADILLA SECTION, ETC., Respondent. BERNARDO FELICIANO, Intervener.

No. 1926. Argued August 26, 1952.—Decided January 28, 1953.

*Víctor Gutiérrez Franqui, Attorney General,* and *A. Torres Braschi, Assistant Attorney General,* for petitioner. *Benicio Sánchez Castaño* and *R. Rivero Cervera,* for intervener, respondent in the main action.

MR. JUSTICE SIFRE delivered the opinion of the Court.

The intervener, Bernardo Feliciano, a public school teacher, was teaching vocational agriculture at the Second Rural Unit "La América" in the town of Lares, when he was suspended from employment and salary by petitioner upon the presentation of the following charges:

"1. On different occasions, during the first months of 1949 and during the previous school year, you, while being a public school teacher in the Second Rural Unit 'La América' of Lares, teaching vocational agriculture knowingly and intentionally sought and attempted to masturbate your pupil Antonio Colón Ríos, by touching and frictioning his male member, thereby producing its erection and at times attempting to induce said pupil to commit with you the infamous crime against nature. As a consequence thereof, the boy Antonio Colón Ríos abandoned his studies in February 1949 and has remained away from school.

"During 1945, 1946 and 1947, while being a public school teacher in the same Unit 'La América,' you committed identical immoral acts with your pupil Eliezer Ríos Monroy as you did with the afore-mentioned Antonio Colón Ríos.

"3. In 1946, and during school year, you committed the same immoral acts mentioned in charge No. 1 with your pupil Luis Arroyo Ortiz. This student dropped the course of vocational agriculture which he was taking with you.

"4. In 1945, you carried on the same immoral conduct with your pupil Pablo Beltrán, which also caused said student to abandon school.

"5. For a long time it is a general rumor, in the community where you have been a public teacher, that you indulge in the vice of homosexuality, with grave prejudice to the name and prestige of the school and causing great restlessness among the parents of the children who attend school under your direction."

The charges were answered by the intervener and heard before a Committee of Arbitrators appointed by petitioner. After having received the evidence presented by the parties, the Committee rendered its report to petitioner who, after having examined the report as well as the evidence presented to the Committee, reached the following conclusions of which the intervener was duly informed:

"The arbitration tribunal designated to hear the charges preferred against you as a public teacher, on September 1, 1949, for immoral acts, has rendered a full report of your action in the case. This report shows that at the hearing you had ample opportunity to defend and that said tribunal heard and examined with all fairness and due justice the entire evidence presented by your attorney as well as that introduced by the prosecuting officers. This evidence was carefully and conscientiously analyzed by the tribunal as a result of which it reached the following conclusions set forth in its report: 1. That of the five charges stated in the complaint, Nos. 4 and 5 were not proved. 2. That the record discloses sufficient uncontradicted evidence to prove fully charge No. 1 and partially Nos. 2 and 3. 3. That although charge No. 5, on moral reputation in the community, has not been established, but on the contrary abundant evidence on your good reputation was presented before the tribunal, this does not counteract the weight of the evidence of the prose-

cution supporting Charges Nos. 1, 2 and 3, because the possibility that the same subject may be an offender and yet enjoy a good reputation is undeniable, especially in the case of offenses committed in utmost secrecy, because of their very nature, such as those which gave rise to the complaint. I have carefully read the report, I have examined it with a sober mind in the light of the stenographic record and of the documentary evidence attached to the record and after making a careful study my opinion fully agrees with that of the arbitration tribunal. As a trier vested with powers by virtue of the law to decide this complaint definitively, I have before me a clear case of conviction of very serious offenses such as masturbation and incitation to the crime against nature, committed by you with pupils of the school unit and of the classes supervised by you as a teacher. Viewing the facts in such capacity, the most elementary principles of justice and my duty and responsibility of keeping absolute surveillance over the moral standards of the school and of the children, have traced for me a single and inescapable course of action: to remove you, as I hereby do, from the office of teacher of public instruction from which you were summarily and are actually suspended, with the subsequent cancellation of license or licenses which you hold to practice as such and with any other proper pronouncements of law."

Intervener appealed from this decision to the former District Court of Puerto Rico, Aguadilla Section, and urged that said decision was contrary to the evidence; that petitioner had considered hearsay evidence; that he erred in weighing the evidence; and that during the whole proceeding he was moved by passion, prejudice and partiality.

The appeal was heard before the lower court and the trial was confined to charges Nos. 1, 2 and 3. Said court entered judgment dismissing the complaint. Petitioner moved for reconsideration and while the motion was pending, he filed in this Court a petition for certiorari to review the order of the lower court. The motion for reconsideration was denied and we issued the writ.

Of the eight errors assigned by petitioner we shall only consider the fourth and fifth, as it is unnecessary to discuss

the others for the decision of this case. The said assignments read as follows:

"4. The respondent court committed error of law in discarding the testimony of Eliezer Ríos Monroy in connection with Charge No. 2, for acts committed in 1945, 1946 and 1947, on the sole ground that no official action was taken against the teacher Bernardo Feliciano on said occasion for said acts.

"5. The respondent court committed error of law in likewise discarding the testimony of Luis Arroyo Ortiz in connection with charge No. 3 on the ground that no official action was taken against the teacher Bernardo Feliciano until 1949, for acts committed in 1943, and because the testimony of said witness was not corroborated."

██ Witnesses Eliezer Ríos Monroy and Luis Arroyo Ortiz testified before the Arbitration Committee but did not appear before the trial court at the hearing of the appeal. At said hearing, petitioner, in order to lay the foundation to present in evidence the testimony given by said witnesses before the said Committee, requested that the summons issued by the Clerk of the trial court ordering Ríos Monroy and Arroyo Ortiz to appear as witnesses before said court, as well as the return of the summons signed by a private individual and sworn to before the Clerk of the Municipal Court of Lares, stating that they were absent from Puerto Rico be made a part of the record. The intervener objected to the admission of these documents and contended that the return alone was not sufficient to prove that Ríos Monroy and Arroyo Ortiz were away from the Island, but that it was necessary to call to the witness stand the person who served the summons in order to cross examine him as to the steps taken by him to make the service. The objection was overruled and the documents were admitted. As a result of this and in the light of paragraph 6 of § 397 of the Code of Civil Procedure, [1] petitioner presented the testimony of Eliezer Ríos Monroy before the Arbitration Board to prove Charge No. 2, and the testimony of Luis Arroyo Ortiz before said committee to prove charge No. 3. They were accepted

in evidence over intervener's objection. He urges on appeal that they were inadmissible and therefore, that assignments of errors four and five must fall because devoid of any basis.

The trial court did not abuse its discretion in admitting said testimonies as part of petitioner's evidence. In order to present in evidence the testimony of a witness given at a former trial between the same parties, and referring to the same subject, when the witness is out of the jurisdiction, it is necessary to show that due diligence was exercised to locate and summon him, but the question as to the sufficiency of the evidence required to prove that fact is confided to the discretion of the court. *Welp* v. *Bogy*, 277 S. W. 600, (Mo.). The summons issued by the Clerk of the trial court and the return thereof gave sufficient basis for said court to exercise its discretion as it did. *Welp* v. *Bogy, supra*, *Bender* v. *Bender*, 193 S. W. 294, (Mo.).

Having disposed of this question, we proceed to discuss the merits of the fourth and fifth assignments. As noted, petitioner claims in the former that the trial court incurred in an error of law in discarding the testimony of Eliezer Ríos Monroy, and in the latter he charges the same type of error as to the testimony of Luis Arroyo Ortiz. In the judgment appealed from, the court summarizes the testimony of the former witness thus:

"We have made a careful analysis of that exhibit and it reveals that Eliezer Ríos Monroy was also in the same school with witness Antonio Colón and that about the years 45–46 and 47 he had respondent Bernardo Feliciano for a teacher; that Feliciano fell in love with him and kept him in the classroom to fill records and notebooks. That Feliciano sat next to

---

[1] Section 397 of the Code of Civil Procedure, (1933 ed.), in its subdivision 6 (§ 35 (6) of the Law of Evidence), provides the following:

"In conformity with the preceding provisions, evidence of the following facts may be given upon a trial:

"6. The testimony of a witness deceased, or out of the jurisdiction, or unable to testify, given in a former action between the same parties, relating to the same matter."

him after ordering the other students to go out to the farm; they were left alone and he began to touch the witness in his parts. According to the witness, he frictioned his member and this happened *many times,* which was the reason why he left the course in agriculture and drew his father's attention whereupon his father talked to the principal. He was changed from agriculture to Industrial Arts.

"Upon being asked whether the acts of rubbing his member lasted some time, the witness answered 'as it was not my intention to stay with him, I went away and told him not to be so fresh, that my object in going to school was to learn something useful.' That he told his father at the end of the school year; that this took place about 1947 in a classroom and that the classroom was a part of the Unit. This is, in synthesis, the essential part and the only evidence presented by the complainant to prove the second charge in this case."

As to the testimony of this witness, the trial court states:

"As we previously said, we have carefully read the entire testimony of this witness and we realize the difficulty encountered by the Arbitration Committee with the conduct of this witness to the extreme that Mr. Santana (Associate Judge of the Tax Court of Puerto Rico) had to admonish him and severely call his attention as to his mode of testifying.

"The court is not convinced by the testimony of this witness, because it is unable to understand how acts of this sort can be carried on many times during the years 45, 46 and 47 without the witness communicating them to his father until the end of the school term of the last year, that is, 1947.

"We do not find it necessary to reason any further, but we must put in the remark that if the events took place in 1945, 1946 and 1947 and the witness communicated the facts to his father and *the latter in turn to the principal,* and they found it necessary to put him in a different course, why did they not take the proper action at that time, that is, what they have done now?

"The same thing had taken place in 1943 with the same Feliciano and his pupil Luis Arroyo Ortiz, which we shall hereafter comment. What did the Principal do? Nothing, that we know of, except put him in a different class. From Agriculture he was changed to Industrial Arts. This was not the way to curb an evil."

We turn to copy the summary which the trial court made of the testimony of Luis Arroyo Ortiz, as well as its comments thereon:

"To support the third charge petitioner offered in evidence the testimony of Luis Arroyo Ortiz, Exhibit B, given also before the Arbitration Committee and which substantially and insofar as relevant reads as follows:

" 'That he knows the teacher Bernardo Feliciano, does not remember since when and that he was his pupil in agriculture in the Second Unit "La América" and that a certain day while he was doing his farming the teacher asked the witness to take his hoe up to the agriculture classroom that Feliciano accompanied him—the witness—and on the way he touched his parts and took his p . . . . . and that then he—the witness—turned back and went to his next class with Miss Medina and that he did not finish the agriculture course that year and changed to carpentry. That it only happened once, about 1943, and that he did not tell his father but told the boys and the principal Herminio Planell. (Notwithstanding this, neither the principal nor any of the boys corroborated it.) That Feliciano punished him because "he was wicked in school and for no other reason" (as testified by witness) and because he was deficient in English and Mathematics, because he—respondent Feliciano—wanted "the children to learn" and that it was the same with all the school children. That he beat him hard because witness was wicked and mischievous.'

"This witness tried to poison himself and upon being asked why, he answered that he did not know.

"We have very little to comment on this charge. Not only because it is remote—it happened in 1943—but also because although Luis Arroyo Ortiz was the only one of the three pupils involved in each one of the charges who communicated it to Herminio Planell, the Principal of said school, as well as to the other children immediately after the incident, no corroboration was brought. But there is still more. From the very testimony offered in evidence, 'Exh. B' it appears that after Feliciano, the respondent, in order to distinguish him from the principal —José Feliciano—did to him what the witness testified and 'he turned back' he went to his next class with Miss Medina and told the Principal. Why then was no investigation made of the matter at that moment or as soon as it was possible and

curbed the evil, if any, from its very roots? On the contrary, for reasons which we ignore and which do not interest us, it was all kept quiet until 1949, when he was charged with the offenses seven years later.

"His testimony still reveals something of greater importance and that is the zeal showed by respondent with regard to the children's studies. He sought to make them study, according to the witness, Feliciano punished him because he, the witness, was *wicked* and for nothing else, because he was deficient in English and Mathematics and because Feliciano wanted 'the children to learn' and he acted the same with all the school children. Of course, we neither understand nor commend the remedy pursued to combat such evil.

"Nor do we understand nor commend the remedy commonly used by the school authorities when the pupils complained of said immoral acts allegedly committed by the respondent, that is, to make them change their course. This did not help matters fundamentally.

"Under these circumstances, and at this belated hour, we can not seriously and in furtherance of justice, give it any value.

"It is significant, and this has kept rolling in our heads, because it is the natural thing to do and easily understood, that Antonio Colón Ríos and Eliezer Ríos did not do what Luis Arroyo Ortiz did, that is, communicate the fact to the other children or to his Principal as soon as the events took place, inasmuch as it is usual among boys to comment such a thing, some to brag about it and others perhaps as repulsive."

The lower court ends its remarks on the testimony of Arroyo Ortiz by saying that the thirty-three years devoted by the intervener "to the service of the government in the educational branch" can not be destroyed by evidence such as the one presented by the petitioner; that due to the nature of the charges made against the intervener, the supporting evidence must be clear, conclusive and convincing; that the proof offered has "little evidentiary value," and that "respondent's good reputation was duly established" by a great number of witnesses.

It must be noted that in commenting the testimony of Ríos Monroy, the trial court referred to "the difficulty en-

countered by the Arbitration Committee with the conduct of this witness to the extreme that Mr. Santana (Associate Judge of the Tax Court of Puerto Rico) had to admonish him and severely call his attention as to his mode of testifying." [2] During the course of said testimony and more than once, Ríos Monroy was asked to make a sketch of the building composing the rural unit "La América" indicating the building at which the facts charged against intervener had taken place. He refused to do so, his reason being that he knew nothing about "drawings." He stated however that he was willing to testify everything he knew. He was admonished by Judge Santana Becerra but no one succeeded in making the witness do what he was asked. Ríos Monroy was submitted to a severe cross-examination by intervener's attorney as to different aspects of his testimony. Said attorney complained that Ríos Monroy refused to answer the questions on cross-examination and asked the committee to strike his testimony. Upon refusing this request Judge Santana Becerra stated that he did not believe that the witness had refused to answer, and added, "He has testified well, with sufficient certainty, as to several facts."

When the trial court refers to the conduct of Ríos Monroy, it does not say that it refused to believe it on that ground. It merely refers to the difficulty encountered by the Committee of Arbitration because of his conduct and that it was necessary to admonish him. Assuming, however, that we should construe the statements of the court in the sense that the conduct of the witness was one of the reasons for discarding his testimony, that conduct would not justify such conclusion, nor the inference that the witness failed to tell the truth as to the essential facts on which he testified.

■ The trial court was not convinced by the testimony of the witness because it was unable to understand "how acts of this sort can be carried on many times during the years

---

[2] Judge Santana Becerra was part of the Committee of Arbitration.

45, 46 and 47 without the witness communicating them to his father until the end of the school term of the last year, that is 1947." Ríos Monroy explained that in that year he had greater "difficulties" with the intervener, the year when he was changed of class, stating that "I was shielding him as teacher and also for my father's sake," referring to the intervener. Apparently the trial court gave no value to this explanation. We are of the opinion that the mere fact that Ríos Monroy waited until the end of the school term of 1947 to inform his father of what was going on is no reason, in the juridical order, to reject his testimony, *Honselman* v. *People*, 48 N. E. 304, (Ill.). We do not approve the attitude of Ríos Monroy in keeping silent and not exposing the intervener as soon as he became aware of his intention, but we believe that the age of the witness at the time of the events, his position in relation with the intervener and the reasons he gave for his silence, deserve consideration.

■ The trial court ends its comments on the testimony of Ríos Monroy by asking why, although the facts took place in 1945, 1946 and 1947, no official action was taken when the witness informed his father of what was happening and the latter in turn the principal of the school, causing Ríos Monroy to change his class. If the trial court by this statement intended to give a reason for not believing the testimony of Ríos Monroy, it is clear to us that the failure to prefer charges against the intervener when the principal of the school was informed of what was going on and the fact that the Principal merely changed the witness of class, is no legal reason for rejecting the testimony. If the events took place as Ríos Monroy stated, the circumstance noted by the trial court does not divest them of the character of facts actually realized, nor can it be used to elude the legal consequences thereof with respect to the intervener. The probative value of the witness' testimony can not be overcome by omissions attributed to third persons.

None of the reasons adduced by the trial court offer legal basis to reject the testimony of Arroyo Ortiz and to exonerate the intervener. Corroboration was not a requisite in a proceeding of this kind. The fact that the charges were not preferred until 1947 is not the fault or omission of Arroyo Ortiz nor does it justify the inference that he did not tell the truth.[3] Besides, in the absence of evidence to the contrary, it should be presumed that the petitioner complied with his duty in preferring charges against the intervener as soon as he learned the facts.

Upon commenting the testimony of Arroyo Ortiz the trial court says "that the school authorities" confined themselves to changing the pupils of classes when they complained about the intervener, but that this measure did not remedy the evil nor help matters fundamentally.

Petitioner can not be made responsible for this, especially, when it was not shown that he had any knowledge of what was happening in the rural unit "La América," before filing charges against the intervener. As to the witness, it is evident that it can not be legally inferred from the omissions or errors attributed by the trial court to the school authorities that his testimony was not true.

The testimony of Ríos Monroy and Arroyo Ortiz was not contradicted by any evidence. The evidence presented by the intervener merely tended to rebut charge No. 1 which is not under discussion in this opinion and to show his good reputation which in the judgment of the trial court was duly established. We do not wish to minimize the value generally granted by the courts to evidence on good reputation when the same is pertinent, but we can not adopt as a rule that every person must be acquitted because it is proved that he has a good reputation. Indeed, we would be adopting it if we sanction the action of said court in rejecting the testi-

---

[3] The Committee, at petitioner's request, permitted the amendment of charge No. 5 so as to show that the acts charged against intervener had taken place in 1943 and not in 1946, as recited in the charge.

mony of Ríos Monroy and Arroyo Ortiz and in exonerating intervener from charges Nos. 2 and 3. Such rule would be in conflict with the well-established doctrine that evidence on good reputation is not by itself sufficient to determine the innocence of the person prosecuted and with the reality stated by the petitioner in his letter to the intervener when he removed him from the post of public instructor that the "possibility that the same subject may be an offender, and yet enjoy a good reputation is undeniable, especially in the case of offenses committed in utmost secrecy, because of their very nature, such as those which gave rise to the complaint."

 Accepting, as substantially correct, the summary made by the court of the testimony of Eliezer Ríos Monroy and of Luis Arroyo Ortiz, we find uncontradicted testimony of witnesses, on specific and definite facts, which were rejected and disbelieved on grounds which, as a matter of law, are without merit or basis notwithstanding the ample discretion and autonomy of the trial court in weighing and appreciating the evidence.

The courts can not refuse to believe an uncontradicted testimony unless there is a reasonable motive for doing so. A witness is presumed to state the truth, unless said presumption is overcome by the manner of testifying, by the nature of his testimony, or by evidence which affects his credibility, honesty, integrity or motives or by conflicting evidence. Section 383 of the Code of Civil Procedure, 1933 ed. [4] On several occasions we have repeatedly held that the uncontradicted testimony of a witness on a particular fact, should be believed unless his version be physically impossible or improbable or he should show himself untrustworthy by his contradictions or his manner of testifying.

---

[4] Section 383 of the Code of Civil Procedure provides:

"A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence."

*Caballero* v. *González*, 53 P.R.R. 513; *Navarro* v. *Compañía "El Ejemplo,"* 53 P.R.R. 692; *Planellas* v. *Heirs of Planellas*, 59 P.R.R. 372; *Pedraza* v. *González*, 66 P.R.R. 713; *Cintrón* v. *Cintrón*, 70 P.R.R. 734.

 In rejecting the testimony of Ríos Monroy and Arroyo Ortiz, that is, the evidence presented by the petitioner to support charges Nos. 2 and 3, and in giving the evidence of good reputation of the intervener a legal effect which it does not have, it is clear that the lower court acted in disagreement with the legal rules and principles governing the probative value and force of the evidence, erroneously arriving at the conclusion, with disregard of them, that the intervener had to be exonerated from said charges, a conclusion not only unsupported by any evidence, but manifestly contrary thereto, when considered in the light of such rules and principles. In thus acting said court committed an error of law. *Anna Gacesa* v. *Consumers' Power Company*, 190 N. W. 279 (Mich.); *Smith* v. *Board of Police Com'rs of City of Los Angeles et al.*, 36 P. 2d 670 (Cal.); *Great Western Power Co.* v. *Pillsbury*, 149 Pac. 35; *Muñoz* v. *District Court*, 63 P.R.R. 226; *Valiente & Cía.* v. *District Court*, 68 P.R.R. 491. As such it is reviewable by certiorari. We have held "that this Court has the discretionary power to issue writs of certiorari to correct errors of inferior courts regardless of the nature of the error alleged." *Pérez* v. *District Court*, 69 P.R.R. 4; *Mercado Riera* v. *Mercado Riera*, 152 F. 2d 86 (C.C.A. 1). There is no reason for making a distinction between the errors which are reviewable by certiorari provided they are errors of law. Therefore, an error of that type is reviewable because of its nature even if it originates or flows from the consideration of the evidence, and the evidence may and should be examined by this Court whenever necessary to determine whether an error of that nature has been committed; of course, not to weigh or determine towards what side it preponderates, or the probabilities are inclined. With the former purpose in mind

we have examined the evidence in the case at bar and we have reached the conclusion that the trial court erred as a matter of law in exonerating intervener from charges Nos. 2 and 3.

In view of the provisions of § 383 of the Code of Civil Procedure, in the light of the doctrine laid down by this Court in the cited cases and for the reasons stated in this opinion, the testimony of Ríos Monroy and Arroyo Ortiz were erroneously rejected, and the facts on which said witnesses testified must be considered as legally established.

██ In a certiorari we may enter the final judgment which should have been rendered by the court *a quo, Pérez* v. *District Court, supra; Fernández* v. *District Court,* 71 P.R.R. 149, and in this proceeding we are in a position to do so.

In view of the foregoing, the order of the trial court dismissing the complaint will be set aside and judgment will be entered declaring partially proved charges Nos. 2 and 3 and consequently removing the intervener, Bernardo Feliciano, from his post of public teacher, with the attendant consequences of cancellation of license or licenses to practice said profession.